UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DANIEL BREEDEN )
)
Plaintiff, )
)
v. ) Civil Action No. 3:21-CV-416-CHB
)
EXEL, INC. )
d/b/a )
DHL SUPPLY CHAIN (USA) )

Defendant.

**COMPLAINT**

*** *** ***
***JURY TRIAL DEMANDED***
*** *** ***

Plaintiff Daniel Breeden, ("Plaintiff") for his Complaint against Defendant Exel, Inc., d/b/a DHL Supply Chain, states as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Daniel Breeden is a Kentucky worker and resident. He resides at 9106 Fairridge Drive, Louisville 40229.

2. Defendant Exel, Inc., d/b/a DHL Supply Chain ("Defendant DHL") is an Ohio Corporation with a principal place of business at 360 Wester Boulevard, Westerville, Ohio 43082.

3. Plaintiff's causes of action against Defendant are brought pursuant to KRS 338.031, KRS 39A.090, KRS 446.070, and the common law of Kentucky.

4. Jurisdiction is proper in this Court pursuant to 28 U.S. Code § 1332, as the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.

5. Venue in this action is proper in this Court pursuant to 28 U.S. Code § 1391(b)(2), as a substantial part of the events, transactions, and occurrences described herein occurred in the geographical environs of the Western District of Kentucky.

## FACTS

6. Plaintiff Daniel Breeden began work as a shipper for Henkel Corporation in December of 2009.

7. Plaintiff was promoted to the position of lead within six months.

8. Over the next several years, Plaintiff was further promoted and given raises and positive performance evaluations.

9. As of the beginning of 2020, Plaintiff was a first-shift supervisor, earning a salary of $65,000 annually.

10. In January of 2020, the Henkel staff transitioned to Exel, Inc., d/b/a DHL Supply Chain, as a result of a contract between the companies.

11. Early in 2020, the DHL staff began working seven days a week, without additional compensation, due to increased production volume. Every day began with start-up meetings led by Plaintiff.

12. On March 5, 2020, Plaintiff received an email from General Manager Wade Henderson, who was new to the facility. The email requested that Plaintiff drive the production numbers up by working the pickers harder. Mr. Henderson made it clear in the email that the company perceived an urgency in driving up its numbers.

13. Plaintiff responded that he would do his best and confirmed that he would "make sure this company succeeds."

14. During March of 2020, Plaintiff was leading his team during an unprecedented set of work circumstances, caused by the COVID-19 global pandemic, which had caused pronounced concerns for workplace safety and health.

15. Along with his crew, Plaintiff was concerned that the company was not supplying sanitizing chemicals, personal protective equipment, and safe distancing protocols.

16. During that time, DHL was regularly bringing in workers from other states during a time when the governor of Kentucky had ordered restrictions in travel for the public good.

17. Plaintiff was concerned that the company's practices violated the Governor of Kentucky's emergency restrictions, such that the workplace setting posed an illegal risk to the workers and caused them to unreasonably risk transmission of the virus between those they encountered.

18. Plaintiff held a good faith belief that the company's practices in violation of safety standards and the Kentucky executive's orders would cause death, serious illness, and permanent injury.

19. As Plaintiff discussed and shared his crew's concerns, he passed them on to Henderson, James Roy, and DHL Senior Human Resources Representative Natasha Stallard.

20. Plaintiff specifically warned the company's representatives about legitimate safety concerns in light of the pandemic and the company's unwillingness to adapt to safety guidelines and prevailing executive orders.

21. Despite Plaintiff's persistent verbal warnings about workplace safety and health, the company did not change its work volume, processes, or health-related protocols. As a result,

every DHL worker was at risk at a time when the Governor of Kentucky had declared a state of emergency.

22. In early March, Henderson arrived at work visibly ill, and his symptoms appeared to be consistent with COVID-19. Plaintiff's subordinates were very worried about the apparent safety risk, and they asked Plaintiff to advocate for them again.

23. Plaintiff expressed his concerns that Henderson's presence in the workplace while ill placed the other workers at risk during a time of global pandemic.

24. The ill General Manager remained at work well after Plaintiff voiced concerns. Henderson returned the next day, much to the concern of Plaintiff and his subordinates.

25. Plaintiff attempted to help lessen the risk to his crew members. Plaintiff distributed telephone numbers for compliance entities and government regulators, so that the workers could take their specific complaints to the government.

26. In the pre-shift meetings, Plaintiff emphasized the need for workplace safety, and in individual conversations, he encouraged his workers to stand up to the company's indifferent attitude. When the workers asked why they did not have access to sanitizing chemicals and protective equipment, Plaintiff passed those concerns along to the company as his own, and he helped facilitate formal government complaints.

27. On April 7, 2020, Plaintiff was called into a meeting with Henderson and Stallard. Henderson informed Plaintiff that "we are going in another direction."

28. Henderson advised that the company's decision to terminate Plaintiff's employment was effective immediately.

29. Before the end of the day, Stallard had caused Plaintiff's health-related benefits to cease. Plaintiff did not even have time to refill his medications before he was stripped of his pharmaceutical coverage.

**COUNT ONE**
**VIOLATIONS RELATED TO**
**KRS CHAPTER 338**

30. Plaintiff incorporates all proceeding paragraphs as if fully set forth herein.

31. Kentucky's fundamental, well-defined public policy has conferred important rights upon workers to enjoy safety in their workplaces. KRS 338.011 provides:

> The General Assembly finds that occupational accidents and diseases produce personal injuries and illness including loss of life as well as economic loss. Therefore, the General Assembly declares that it is the purpose and policy of the Commonwealth of Kentucky to promote the safety, health and general welfare of its people by preventing any detriment to the safety and health of all employees, both public and private, covered by this chapter, arising out of exposure to harmful conditions and practices at places of work and otherwise to preserve our human resources by providing for education and training, inspection of workplaces, consultation, services, research, reports and statistics, and other means of furthering progress in the field of occupational safety and health.

32. Under Kentucky state law, complaining about unsafe work conditions is a statutory right contained in the Kentucky Occupational Safety and Health Act ("KOSHA"). Under KRS 338.121(3)(a):

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or *because of the exercise by such employee on behalf of himself or herself or others of any right afforded by this chapter[.]*

33. Elsewhere in the KOSHA scheme, the general clause imposes upon employers the onus to "furnish to each of [its] employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to

his employees[.]" KRS 338.031.

34. Given what is known about COVID-19 – and what was known even at the time of the terminations at issue here – death or serious physical harm were valid concerns of these workers. As of June 23, 2021, Covid-19 has caused the deaths of 602,164 individuals in the United States alone.[1]

35. Plaintiff had the right to insist upon a safe work environment, and this protected activity could not be used as a basis for his discharge.

36. Through KRS 446.070, Kentucky has supplied a private, civil right of action to workers in Plaintiff's position, who have been harmed as a result of another person's violation of a statute, when the statutory scheme itself does not supply a civil remedy.

37. KRS Chapter 338 does not supply a remedy for an employer's violation or retaliation, so KRS 446.070 is the proper avenue for relief.

38. Plaintiff's discharge was contrary to a fundamental and well-defined public policy evidenced by existing statutory law.

39. Defendant DHL's actions in discharging Plaintiff constitutes the common law claim of wrongful discharge in violation of public policy.

40. Plaintiff's complaints, made to Defendant DHL's agents, regarding workplace safety constitute the exercise of a right conferred by a well-established legislative enactment under Kentucky law.

41. Plaintiff's termination was affected in violation of Kentucky's well-defined public policy.

42. Plaintiff incurred damages as a result of Defendant's actions.

---

[1] *Coronavirus in the U.S.: Latest Map and Case Count*, N. Y. Times (Jun. 23, 2021), https://www.nytimes.com/interactive/2021/us/covid-cases.html.

43. Plaintiff is entitled to recover from Defendant DHL the damages sustained by reason of the violation.

44. Defendant DHL's actions were intentional, willful, and malicious. These actions were carried out with flagrant indifference to Plaintiff's rights, were affected with an awareness that the conduct would result in physical or emotional injury, and were specifically intended to subject Plaintiff to cruel and unjust hardship.

45. At all times relevant to this matter, Defendant DHL's agents' actions that were taken with respect to Plaintiff were authorized, ratified, or should have reasonably been anticipated by Defendant.

46. As a result, Defendant DHL's conduct justifies a judgment of punitive damages, as permitted by applicable law and due process, in an amount to be determined by a jury.

**COUNT TWO**
**VIOLATIONS RELATED TO**
**KRS CHAPTER 39A**

47. Plaintiff incorporates all proceeding paragraphs as if fully set forth herein.

48. Kentucky's fundamental, well-defined public policy has conferred important rights upon workers to obey and give effect to the executive orders issued forth from the Governor dealing with emergency workplace safety. For instance, KRS 39A.010 provides:

> The General Assembly realizes the Commonwealth is subject at all times to disaster or emergency occurrences which can range from crises affecting limited areas to widespread catastrophic events, and that response to these occurrences is a fundamental responsibility of elected government in the Commonwealth. . . . [I]n order to protect life and property of the people of the Commonwealth, and to protect public peace, health, safety, and welfare, and the environment; and in order to ensure the continuity and effectiveness of government in time of emergency, disaster, or catastrophe in the Commonwealth, it is hereby declared to be necessary . . . [t]o confer upon the Governor, the county judges/executive of the counties, the mayors of the cities and urban-county governments of the Commonwealth, and the

> chief executive of other local governments the emergency powers provided in KRS Chapters 39A to 39F [and to] authorize the establishment of a statewide comprehensive emergency management program and integrated emergency management system, the promulgation of orders or administrative regulations, and the taking of other steps necessary and appropriate to carry out the provisions of KRS Chapters 39A to 39F.

49. Plaintiff's complaints and desire to adhere to the Kentucky Governor's executive orders line up cleanly with the state's important public policy.

50. Plaintiff's discharge was contrary to a fundamental and well-defined public policy evidenced by existing statutory law.

51. Defendant DHL's actions in discharging Plaintiff constitute the common law claim of wrongful discharge in violation of public policy.

52. Plaintiff's complaints, made to Defendant DHL's agents, regarding workplace safety constitute the exercise of a right conferred by a well-established legislative enactment under Kentucky law.

53. Plaintiff's termination was affected in violation of Kentucky's well-defined public policy.

54. Through KRS 446.070, Kentucky has supplied a private, civil right of action to workers in Plaintiff's position, who have been harmed as a result of another person's violation of a statute, when the statutory scheme itself does not supply a civil remedy.

55. No portion of the statutory scheme provides a remedy for affected people such as Plaintiff.

56. Plaintiff's is entitled to recover from Defendant DHL the damages sustained by reason of the violation.

57. Defendant DHL's actions were intentional, willful, and malicious. These actions were carried out with flagrant indifference to Plaintiff's rights, were affected with an awareness

that the conduct would result in physical or emotional injury, and were specifically intended to subject Plaintiff to cruel and unjust hardship.

58. At all times relevant to this matter, Defendant DHL's agents' actions that were taken with respect to Plaintiff were authorized, ratified, or should have reasonably been anticipated by Defendant.

59. As a result, Defendant DHL's conduct justifies a judgment of punitive damages, as permitted by applicable law and due process, in an amount to be determined by a jury.

WHEREFORE, Plaintiff Daniel Breeden prays that this Court:

1. Declare Defendants conduct to be in violation of Plaintiff's rights;
2. Award Plaintiff compensatory damages in such amounts as shall be proved at trial for their economic and other losses, including, but not limited to, back pay, economic losses, embarrassment, humiliation, and mental and emotional distress;
3. Award Plaintiff punitive damages in an amount to be determined by a jury;
4. Award Plaintiff their reasonable attorneys' fees and costs, to the extent recoverable under the law; and
5. Grant Plaintiff such further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a jury to try all issues so triable by jury.

Respectfully Submitted,

/s/ *Robyn Smith*__________

Robyn Smith
Adam M. Johnson
4350 Brownsboro Road, Suite 110
Louisville, Kentucky 40207
(502) 893-4569
firm@robynsmithlaw.com
*COUNSEL FOR PLAINTIFF*