UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| DANIEL BREEDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:21-CV-416-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| EXEL, INC. | ) | **ORDER** |
| d/b/a DHL SUPPLY CHAIN (USA), | ) | |
| | ) | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Exel, Inc.'s d/b/a DHL Supply Chain (USA) Motion to Dismiss. [R. 8]. Plaintiff Daniel Breeden filed a Response, [R. 15], and Defendant replied, [R. 16]. Also before the Court is Plaintiff's Motion to Certify Questions of State Law. [R. 9]. Defendant filed a Response, [R. 17], and Plaintiff replied, [R. 21]. Both matters are now ripe for a decision. For the following reasons the Court grants Defendant's Motion to Dismiss and denies Plaintiff's Motion to Certify Questions of State Law.

**I.     BACKGROUND**

Plaintiff Daniel Breeden alleges he was wrongfully terminated for challenging the lack of workplace safety at the onset of the pandemic. [R. 1, pp. 5–7, ¶¶ 30–57]. As discussed herein, Breeden's wrongful termination claims fit within Kentucky case law like a square peg in a round hole.

Giving Plaintiff the most favorable interpretation of the allegations in his complaint, the Court gleans the following. Breeden began employment with Defendant Exel, Inc. d/b/a DHL Supply Chain (USA) ("DHL") around January 2020 after DHL acquired a warehouse facility in Louisville, Kentucky from Breeden's previous employer. [R. 1, p. 2, ¶¶ 9–10]. By March 2020, Breeden and the other DHL staff began working seven days a week to meet increased production

demands. *Id*. at p. 2, ¶ 11. The COVID-19 pandemic emerged during this time. According to Breeden, the pandemic "caused pronounced concerns for workplace safety and health" amongst colleagues and Breeden's subordinates. *Id.* at p. 3, ¶ 14. By mid-March, Kentucky Governor Andy Beshear ("Governor") had issued a series of emergency executive orders to address COVID-19. *Id*. at pp. 3–4, ¶¶ 18, 20–21.

Breeden was dissatisfied with DHL's response to the pandemic. *Id*. at p. 3, ¶ 15–20. According to the Complaint, he "warned the company's representatives about legitimate safety concerns in light of the pandemic and the company's unwillingness to adapt to safety guidelines and prevailing executive orders." *Id*. at p. 3, ¶ 20. He voiced concerns when a supervisor reported to work ill. *Id*. at p. 4, ¶ 23. He distributed telephone numbers for compliance entities and government regulators to his colleagues and encouraged them to "stand up to the company's indifferent attitude." *Id*. at p. 4, ¶¶ 25–26. On April 7, 2020, DHL terminated Breeden's employment. *Id.* at p. 4, ¶ 28. Breeden alleges he was fired for conveying concerns to DHL about the company's violations of the Governor's emergency restrictions. *Id*. at pp. 3–4, ¶¶ 17, 38, 53.

Accordingly, Breeden's two-count Complaint against DHL alleges wrongful termination in violation of: (1) Ky. Rev. Stat. § 338.011 (the Kentucky Occupational Safety and Health Act ("KOSHA")), Count One; and (2) Ky. Rev. Stat. § 39A.010, Count Two. [R. 1, pp. 5, 7] The Court addresses each complaint in turn.

## II.      STANDARD OF REVIEW

A pleading that states a claim for relief "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings require plausible allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the

reasonable inferenced that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a complaint is attacked by a 12(b)(6) motion to dismiss, the court must "construe [the] complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [their] claim that would entitle . . . relief." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013). However, these principles are inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. Nor does an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "shown"—"that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### III. ANALYSIS

Under Kentucky law, an employer may generally terminate its relationship with an employee at will. *See Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). However, Kentucky law provides a common-law wrongful termination cause of action when the discharge is contrary to a fundamental and well-defined public policy that is evidenced by a constitutional or statutory provision. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). The well-defined public policy must provide statutory protection to the worker in the employment situation — that is, there must be an employment-related nexus that forms the basis of the well-defined cause of action for wrongful termination. *Id*. at 402. Kentucky "[c]ourts have limited an employee's claim for wrongful discharge to situations where the employer was retaliating against the employee for 1) *exercising a right* conferred by a well-

3

established legislative enactment or 2) for *refusing to violate* a statutory or constitutional provision. *Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 591 (W.D. Ky. 2004) *aff'd*, 123 F.App'x 699 (6th Cir. 2005). The question of whether there is an actionable public policy foundation is a matter of law for the Court to determine. *Grzyb*, 700 S.W.2d at 401.

Breeden's two counts seek to establish the requisite actionable public policy foundation by arguing that DHL discharged him for exercising a right protected through legislative enactment. In Count One, Breeden attempts to bootstrap his wrongful termination claim to the broad public policy described in KOSHA. [R. 1, p. 5, ¶ 31]. Specifically, he argues that KRS § 338.031 conferred a right to insist on a safe work environment, and this protected activity could not be the basis for his discharge. *Id*. p. 6, ¶ 35. Notably, Breeden is solely concerned with the rights created by the policy of KOSHA and not the remedies provided in the statute. *See id.* Further, Breeden argues that KOSHA "does not supply a remedy for an employer's violation or retaliation, so KRS 446.070[1] is the proper avenue for relief." *Id.* at p. 6, ¶ 37.

In Count Two, Breeden argues that DHL wrongfully terminated his employment due to his complaints regarding workplace safety. *Id.* at p. 8, ¶ 52. Breeden claims this right is protected by a "well-established legislative enactment." *Id*. The Complaint suggests KRS 39A.010 is the well-established legislative enactment, and the policy found therein provides protected activity that sustains Breeden's claims. *Id.* at pp. 7–8, ¶¶ 48–51.

Albeit for different reasons, Breeden's Complaint fails to state a claim. The Court dissects the two counts in Breeden's Complaint to explain why his wrongful termination claims are denied.

---

[1] KRS 446.070 provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Ky. Rev. Stat. Ann. § 446.070 (West 2021).

### A. COUNT ONE

Breeden fails to state a claim under Count One because KOSHA preempts a common-law wrongful termination claim. The aforementioned "at-will exception does not apply when the statute creating the public policy exception also provides the structure for pursuing a claim." *Hines v. Elf Atochem N. Am., Inc.*, 813 F. Supp. 550, 552 (W.D. Ky. 1993) (granting summary judgment because the OSHA statute provided the remedy). In *Grzyb*, the respondent brought a wrongful termination claim alleging his employer discriminated against him on the basis of sex. *Grzyb*, 700 S.W.2d at 401. The Kentucky Supreme Court dismissed respondent's claim because the statute declaring sex discrimination unlawful established the means to adjudicate such complaints. *Id.* The court stated, "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Id*.

*Grzyb*'s holding applies to KOSHA. In *Benningfield v. Pettit Env't, Inc.*, 183 S.W.3d 567, 571 (Ky. Ct. App. 2005), the Kentucky Court of Appeals rejected petitioner's attempt to distinguish KOSHA as "significantly different" than the statute at issue in *Grzyb*. *Id*. at 571. The court affirmed that *Grzyb*'s holding applies to all statutes that specify the unlawful act and provide the remedy available to aggrieved parties. *Id*. KRS § 338.121 provides the remedy for a KOSHA violation:

> Any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of this subsection may, within a reasonable time after such violation occurs, file a complaint with the commissioner alleging such discrimination. Upon receipt of such complaint, the commissioner shall cause such investigation to be made as deemed appropriate.

Ky. Rev. Stat. § 338.121(3)(b). Because KOSHA provided the policy and structured the remedy when pursuing alleged violations, the court held the statute preempted petitioner's wrongful termination claim. *Benningfield*, 183 S.W.3d at 571.

Additionally, this Court has recognized that KOSHA preempts common-law wrongful termination claims premised on violations of the statute. In *Hines*, the plaintiff alleged her employer terminated her for "not violating OSHA laws, for filing worker's compensations claims, and for refusing to invade employee's right to privacy." *Hines*, 813 F. Supp. at 552. In light of *Grzyb*, the court dismissed the wrongful termination claim pertaining to KOSHA because the statute contained a remedy for its violations. *Id.*

*Grzyb* and its progeny control here. Breeden's wrongful termination claim is premised upon DHL's alleged violations of KOSHA. [R. 1, pp. 5–6, ¶¶ 31–39]. KOSHA sets forth its statement of purpose and policy in § 338.011 and the remedy to pursue when alleging violations in § 338.121. Thus, Breeden's wrongful termination claim in Count One is preempted.

Breeden's counter arguments are unpersuasive. First, Breeden argues that KRS § 338.121 is limited to complaints filed with the agency, not the employer. [R. 15, pp. 15–16]. His interpretation conflicts with the Kentucky Labor Cabinet's adopted regulations that define "complaint" as "any oral or written communication related to an occupational safety and health concern made by an employee to an *employer*, governmental agency, or made to the commissioner or the commissioner's designee." 803 KAR 2:250 (emphasis added). The Court gives deference to a state agency's interpretation of the state statute it administers and finds its interpretation here reasonable. *See Mich. Bell Tel. Co. v. MFS Intelenet of Mich., Inc.*, 339 F.3d 428, 433 (6th Cir. 2003) (noting the "inherent logic of . . . allowing state agencies wider deference in state determinations"); *Macias v. N.M. Dep't of Labor*, 21 F.3d 366, 369 (10th Cir.

1994); *Pharm. Rsch & Mfrs. of Am. V. Meadows*, 304 F.3d 1197, 1208 (11th Cir. 2002); *see generally Hines*, 813 F. Supp. at 551 (finding that the plaintiff's wrongful discharge claim was preempted by KOSHA even though the plaintiff only made oral complaints to employer).

Second, Breeden argues that *Gryzb* is distinguishable because the permissive language of KOSHA is distinguishable from the mandatory language found in the statute in *Grzyb*. [R. 15, pp. 16–17]. The KOSHA scheme states that a person "may" pursue a claim, KRS § 338.121, while the statute in *Grzyb* states that "any person injured by any act in violation of the provisions of this chapter *shall* have a civil cause of action . . . ." KRS 446.010(20) (emphasis added). As a result, Breeden concludes that the permissive language implies other remedies are available, i.e. KRS 446.070, but the mandatory language creates the exclusive remedy. [R. 15, pp. 17–18]. The Court is not moved. *Grzyb* did not limit its holding to statutes that offer the exclusive civil remedy. *Hines*, 813 F. Supp. at 552. The *Benningfield* court unambiguously explained that "*Grzyb* does not require the statute to specify that the remedy provided is exclusive. *Grzyb* only requires that the statute 'specif[y] the civil remedy available . . . .'" *Benningfield*, 183 S.W.3d at 571 (quoting *Grzyb*, 700 S.W.2d at 401).

Finally, Breeden argues that KOSHA "does not supply a remedy for an employer's violation or retaliation, so KRS § 446.070 is the proper avenue for relief." [R. 1, p. 6, ¶ 37]. His argument defies the plain language of KRS § 338.121, an anti-retaliation statute. Thus, Breeden's attempt to evade KOSHA through § 446.070 is denied.

### B. COUNT TWO

The issue with Count Two is whether the public policy described in Chapter § 39A.010 has an "employment-related nexus." The public policy required for a wrongful termination claim must be defined by statute and "directed at providing statutory protection to the worker in his

employment situation." *Shrout v. The TFR Grp.*, 161 S.W.3d 351, 354 (Ky. Ct. App. 2005). This employment-related nexus is "critical to the creation of a 'clearly defined' and 'suitably controlled' cause of action for wrongful discharge." *Grzyb*, 700 S.W.2d at 402.

Breeden's wrongful termination cause of action in Count Two fails because the policy in § 39A.010 does not have an employment-related nexus. In *Marshall v. Montaplast of North America, Inc.*, 575 S.W.3d 650, 651 (Ky. 2019), the plaintiff argued that her employer wrongfully terminated her for exercising her protected rights under the Sex Offender Registration Act. *Id*. at 652. The plaintiff pointed to KRS §17.510(8), but the statute included no language relating to employment. *See id.* The *Marshall* court reviewed wrongful termination precedent and found that "[a]ll of the statutory rights previously recognized by the Court . . . were explicitly stated in the statute by language such as 'Employees may, free from restraint or coercion' and 'No person including but not limited to an employer . . . shall prohibit.'" *Id.* at 656. Here, § 39A.010 features no express language relating to employment. KRS §§ 39A.010–990. The chapter title for the statute is "Statewide Emergency Management Programs." *Id.* And as DHL correctly states, the statute "provides legislation regarding disaster or emergency occurrences within Kentucky." [R. 8–1, p. 10]. It has nothing to do with employment in the Commonwealth. Without the explicit language described in *Marshall*, the Court declines to excavate the statute for an employment-related nexus where none exists. Thus, the public policy invoked for Count Two fails to sustain Breeden's wrongful termination claim.

Breeden's Complaint vaguely hints that the public policy necessary for a wrongful termination claim is evidenced from the Governor's emergency executive orders related to COVID-19. [R. 1, pp. 7–8, ¶¶ 48–49]. While ambiguous, the Court will address this argument

out of an abundance of caution. The question is whether the Governor may promulgate public policy via an executive order.

The Kentucky Supreme Court has recently affirmed that it is the General Assembly, not the Governor, that establishes the public policy of the Commonwealth of Kentucky. In *Cameron v. Beshear*, 628 S.W.3d 61 (Ky. 2021), the court addressed justiciability issues pertaining to the Governor's challenges to legislation restricting his ability to take unilateral action during declared emergencies. *Id*. at 67. Pertinent to this matter, the court stated, "As we have noted time and again, so many times that we need not provide citation, the General Assembly establishes the public policy of the Commonwealth." *Id*. at 75. Thus, *Cameron* recognizes the Governor's inability to create the "fundamental and well-defined public policy" required for a wrongful termination claim. *See also Valdivia v. Paducah Ctr. For Health & Rehab., LLC*, 507 F. Supp. 3d 805 (W.D. Ky. 2020) ("[T]here is no caselaw to support Valdivia's argument that Executive Orders may be used as well-defined public policy in the wrongful termination context."). Pursuant to *Cameron*, Breeden's argument is misplaced where he urges that the "orders promulgated by the Executive Branch, and its respective agencies, provide the *policy* in question." [R. 15, p. 19] (emphasis in original). But even if the executive orders cited by Breeden established the Commonwealth's "public policy," his claims still fail. The primary purpose of those orders was to "reduce and slow the spread of COVID-19", not to protect workers in their employment. [R. 15–2, p. 2]; *see also Valdivia*, 507 F. Supp. 3d at 814 (quoting Kentucky Executive Order No. 2020–257). Thus, Count Two fails here as well.

Finally, DHL argues that recent amendments to KRS Chapter 39A provide it with immunity from Breeden's claims. [R. 8–1, p. 12]. In response, Breeden challenges the amendment's constitutionality describing it as a "Special Legislation and an impermissible

9

expansion of sovereign immunity." [R. 15, p. 23]. Because the Court finds that Chapter 39A lacks an employment-related nexus, an examination of Breeden's constitutional challenge, noticeably absent in his Complaint, is unwarranted.

### IV. MOTION TO CERTIFY QUESTIONS OF STATE LAW

The Court now turns to Breeden's Motion to Certify Questions of State Law ("Motion"). [R. 9, pp. 1–9]. In his Motion, Breeden moves this Court to certify the following questions:

1. Does Kentucky recognize a wrongful discharge claim when an employer violates KRS 338.011 and KRS 338.031?
2. Does Kentucky recognize a wrongful discharge claim when an employer discharges a worker who opposes an employer's violation of an Executive Order issued pursuant to KRS 39A?

*Id.* at 4–6, 8–9.

Rule 76.37 of the Kentucky Rules of Civil Procedure provides that questions of state law that may be determinative of the pending action and appears to not have a "controlling precedent in the decisions of the Supreme Court and the Court of Appeals of this state" may be answered by the Kentucky Supreme Court when certified. Ky. R. Civ. P. 76.37. The decision to utilize a state court certification process lies within the sound discretion of the federal court. *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015). The following principles guide the Court's decision to deny Breeden's Motion.

Certification is "most appropriate when the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). However, a federal court need not trouble the state court with every unsettled question of state law so long as "well-established principles exist to govern a decision." *Hargis*, 785 F.3d at 194. When considering a motion to certify, the following factors should be considered: (1) the likelihood of recurrence of the precise question raised; (2) whether certification is appropriate based on the

question presented, and (3) the "inevitable delay inherent in the certification process." *Am. Fidelity Bank & Trust Co. v. Heimann*, 683 F.2d 999, 1002 (6th Cir. 1982).

Applying the aforementioned considerations directs the Court to deny Breeden's Motion. Though the on-going COVID-19 pandemic may increase the likelihood that similar questions will recur, they have already been adequately addressed by the Kentucky Supreme Court and Court of Appeals. *See supra* Sections III.A&B. Further, certification to the Kentucky Supreme Court inherently delays the resolution of this matter. *Heimann*, 683 F.2d at 1002. Finally, the Court has discerned clear, well-established principles from Kentucky case law to follow when deciding this matter. *See id.* Because the Court finds the state law "sufficiently clear" from the "text of the state statute itself" and "from analogy to a state court decision," Breeden's Motion is denied. *Asher v. Unarco Material Handling, Inc.*, No. CIV.A.6:06-548-DCR, 2008 WL 2473680, at *5 (E.D. Ky. June 16, 2008).

V. **CONCLUSION**

While sympathetic to the various hardships and difficulties caused by the pandemic, Breeden has not properly stated a claim. Pursuant to Kentucky law, a common-law wrongful termination claim requires a discharge that conflicts with a fundamental and well-defined public policy evidenced by a constitutional or statutory provision. *Grzyb*, 700 S.W.2d at 401. Breeden fails to satisfy this requirement for various reasons. Further, the factors discerned by the Sixth Circuit and well-established principles found in Kentucky case law directs the Court to address this matter without assistance from its sister state court.

Accordingly, it is **HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss, **[R. 8]**, is **GRANTED.**

2. Plaintiff's Motion to Refer Case to Supreme Court of Kentucky On Certification of Questions of Law, **[R. 9]**, is **DENIED**.

This the 1st day of December 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY